Good morning. May it please the Court, my name is Amy Gilbrow and I represent the plaintiff appellant in this matter, Robert Sisco. This is a social security case concerning an individual who is found disabled beginning September 1st, 2003 because he had a back impairment which prevented him from performing a normal eight-hour a day, forty-hour week. As a result of this finding, Mr. Sisco received supplemental security income benefits under Title 16 of the Act. At the same time that he applied for SSI, Mr. Sisco also applied for disability insurance benefits under Title 2. The ALJ concluded in the same decision that Mr. Sisco was not eligible for disability insurance benefits because he hadn't established that he had a severe impairment at any time prior to September 1st, 2003 and therefore was not last insured for disability insurance benefits on June 30th, 2001. We're asking the Court to consider a narrow issue here. Therefore, was the ALJ's decision that Mr. Sisco did not have a severe impairment prior to June 30th, 2001 supported by substantial evidence and free of legal error? If not, this case should be remanded so the ALJ can make a proper finding at Step 2 and, if appropriate, proceed with a sequential evaluation process to determine disability. In making, in analyzing this case, we'd ask the Court to look to three separate points. First, was there evidence that established that there was a severe impairment? Not necessarily established, but is there evidence that showed there was a severe impairment? Did the ALJ properly consider that evidence, and should the ALJ, did he have a duty to further develop the record given that Mr. Sisco was not represented at the time of this hearing? The rule, the rules in this case are clearly established by case law and the Commissioner's regulations. Step 2 is the de minimis screening device used to dispose of groundless claims. Mr. Sisco's back impairment is severe only if, on June 30th, 2001, it was merely a slight abnormality that had no more than a minimal effect on his ability to perform basic work activities. And in this case, we asked the Court to consider six pieces of evidence, which established that prior to June 30th, 2001, Mr. Sisco had a severe impairment, an impairment that more than, that was more than a slight abnormality, which had more than a minimal effect on his ability to do basic work activities. In June 1999, he saw a doctor at the 45th Street Clinic, Dr. Rose. This is at pages 120 to 121 of this transcript. She advised him to move throughout the day and structure his day so he didn't have to sit for extended periods of time. Sitting is a basic work activity. If Mr. Sisco was unable to sit for prolonged periods of time, he had a limitation in his ability to perform basic work activities. On January 26th, 2000, the 45th Street Clinic noted he was taking medications for back pain. On August 18th, 2000, he saw his orthopedist, Dr. Schweigler, for back pain, who thought he was struggling with back symptoms related to abnormalities in his SI joint, his sacroiliac joint, at 91 to 92 of the transcript. January 11th, 2001, five months prior to his date last insured, he saw another doctor at the 45th Street Clinic, Dr. Lyons, who noted that he had increased back pain with a new job and suggested that he go to a pain clinic if he couldn't find relief of his pain from what she recommended. On September 13th, 2001, about two and a half months after his date last insured, Dr. Schweigler looked at a magnetic resonance imaging scan, which had been performed on the same day. It showed problems with the L4-5 transitional disc. That was the disc that was above the operation he'd had in 96. And it was his opinion that Mr. Sisco was not able to work at that time. The sixth piece of evidence is that Mr. Sisco also completed a pain questionnaire on September 13th, 2001, which is at pages 92 to 99 of the transcript. In the pain questionnaire, he reports that he stays at home most of the time. He changes positions frequently. He walked more slowly than usual and could only walk short distances. He had to lie down to get other people to do things for him, and he could only stand for short periods of time. We believe this evidence shows that Mr. Sisco had at least a severe impairment, which met the threshold severity standard on his date last insured. The question the Court should ask next is, did the ALJ properly consider this evidence? Looking at the ALJ's rationale at pages 21 to 25 of the excerpts of record, the only piece of this evidence that I just discussed, which was mentioned, discussed, or addressed by the administrative law judge, is the evaluation of Dr. Lyons in January 2001. And even his discussion of that particular piece of evidence at ER 21 does not indicate that his pain increased when he was working. The Court should remand, since the ALJ did not properly consider all of this evidence. The Commissioner argues this case is... Is there any requirement that the ALJ affirmatively identify or mention specific evidence to demonstrate that he, in fact, considered it? Yes. Well, in Tidwell v. Outfall, the case that the Commissioner cites, the Ninth Circuit found that the ALJ properly found Ms. Tidwell was not disabled at Step 2 because the ALJ discussed and reviewed all of the evidence before him in making his determination. The ALJ is required to discuss the medical evidence which supports the findings in his case. There's lots of... Let me go flipping through the records here and find entries about various visits to doctors, and there are all sorts of entries that suggest that the claimant is able to function sufficiently. That's not mentioned in here either. I mean, so are you saying the requirement is to list everything that supports his conclusion? He didn't do that, but obviously it can't be inferred that he didn't pay attention to what he found in front of him. I'm not sure what it is you're thinking the ALJ has to do. Does he have to regurgitate all the medical evidence simply to demonstrate he took it into account? Well, in this case, the ALJ said there was no evidence to support a finding that Mr. Cisco had limitations prior to September 1, 2003, in his decision. And we've just cited several pieces of evidence which shows that he had limitations, which the ALJ didn't address. So his finding was that the impairment wasn't severe prior to September 1, 2003, because the evidence didn't support any limitations, when he didn't discuss these several pieces of evidence, which do show that limitations exist. Well, my worry is that you stated the standard of review, which is substantial evidence, and now you're asking me to second-guess the ALJ as to what is substantial evidence at the time he's making this determination. Now, I looked at what substantial evidence is, and I guess if you're arguing in your particular favor or you're arguing against a number of people who are most likely to have this in a jury trial, that there's no evidence from which the jury can make that determination, then I have to give them every benefit of the doubt on every piece of evidence. And therefore, I don't overturn juries very often. But the problem that I have here is that this ALJ had in front of him several different pieces of information. From 1993, this guy had had low back pain, and he had a lumbar fusion surgery, and he had hardware removal surgery. And all those occur from 1993 to 1998. And then in October 27, 1998, there's complaints of back pain to a doctor, but the pain has improved significantly, getting along well, having returned to work approximately. I've signed a form stating he'd been able to actively work for at least 30 days. Excuse me, Judge Smith, all that evidence was prior to the alleged onset date. Well, I understand. But what we're suggesting is we're going to the onset date. He's got to make this happen as of a certain date, June 30. And I'm looking at all the records that come up to June 30 and all the records that come after June 30, and I'm trying to say, can that ALJ have said, well, he just missed substantial evidence in determining that it didn't happen until June 30? That's what my real determination is, given the standard of review. And I guess I'm having a tough time saying that when this ALJ who does this every day sees these kind of complaints every day, goes through them every day, that now I'm saying, this is substantial evidence he should have discussed in this report. When there's all kinds of evidence, which I could have repeated if you'd wanted me to, which would suggest he's doing great. But he didn't cite the evidence on either side in his decision. Well, it seemed to me that he made some decisions based on the total of the evidence. That's why my colleague's question was pretty important to me. What does he have to say? How many things has he got to sit down, as my law clerk did, and for me, cite every bit of the evidence on both sides so that I can just say that? I didn't see any case that said he had to do that. Well, in Conant v. Barnhart, a 2003 case, the court, this was addressing an ALJ's credibility decision and deciding what the ALJ needed to address. The court found it was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss. Conant cites several other cases. Pinto v. Massonari is one of them. The court has consistently found that the ALJ is required to make these findings and is required to explain in his decision the reasons for the findings. In this case, the ALJ found there was no evidence of any limitation prior to September 1, 2003, when there was evidence that he was required to address based on Conant that he did not discuss. This court can't look at that evidence that wasn't discussed by the ALJ and say that his decision was supported by substantial evidence. I guess I'm trying to figure out if the ALJ says there's no evidence, then he found no substantial evidence to suggest that that was going to be the case he would have made. That's what he's telling me. And he's gone through the same facts you are, they were all presented to him, and he's found no substantial evidence to suggest it. I see that my time is up. Thank you. Good morning, Your Honors. I'm Catherine Miller on behalf of the Commissioner of Social Security. Although this is a case about the plaintiff's back condition, it's also a case about his ability to travel, to work, to engage in robust activities, to use medication sparingly, and to go to the doctor only once or twice a year during the relevant period. All of these pieces of evidence show there was no significant limitation prior to the date last insured. Well, let me ask you to focus in particular. I mean, the ALJ's decision says that there's no medical opinion in the record of the claimant's limitations until September of 2003. In fact, there seem to be several items in the record that suggest limitations. The one that struck me the strongest was from September 2001, two years before, albeit a date after the last insured date, where there's an opinion that Mr. Sisko is no longer able to work at this time. Yes. How can you justify the ALJ's conclusion that there was nothing before September 2003, when in fact two years before that there's an opinion that says he can't work? Well, I think what the ALJ was saying is there was not a formal opinion of disability. Dr. Schweigler in 2003 submitted reports to DSHS for disability purposes. He also did not set out specific functional limitations in that 2001 opinion, although he did say he's no longer able to work at this time. He did believe that the plaintiff would get back on track in short order with conservative treatment, medications, and he referred him to a spine specialist. Now, what's interesting is the plaintiff didn't follow up with Dr. Schweigler. He was supposed to follow up in two months. In fact, he didn't go to a doctor for another year. And at that time, he went for a medication refill. So we can assume that he evidently did get back on track. Well, it could be concluded to that effect, but when I look at what the ALJ discussed in the earlier, I mean, the latter part of the opinion specifically says I'm going to speak to the SSI claim. Right. The first part, which leads to the conclusion that he was not disabled prior to the date last insured, speaks in evaluation in January 2001, and then the next entry is October 2002, with no discussion either way of a report in September of 2001, not long after the date last insured. Given that the level two inquiry is supposed to be a de minimis screening, I find it surprising there's no reference made whatsoever to something described as an opinion by the treating physician that Mr. Sisko was unable to work at this time. Well, the ALJ did not discuss that specific piece of evidence, and it was after the date last insured. I think the important point, however, is that the evidence fails to show any significant limitation prior to the date last insured. And I know this Court was concerned about, you know, the ALJ having to discuss every piece of evidence or not discuss it. Obviously, we want the ALJ to make specific findings, although it would be an onerous task to have them discuss every piece of evidence, particularly when we're looking at records from 1993 through 2000. Well, that's really why I've singled out. The claimants offered a number of examples, and I've singled out the September 2001 report, because it doesn't really require any inference. You have a physician, the treating physician, saying he can't work now. That sounds like it's something that's worthy of comment. And if you're going to, given his conclusion that there was no disability until two years after this, some explanation might fairly be expected. Well, we don't require ALJs to say magic words. And I think what the ALJ did, too, is he looked at the evidence after September 2001, and what we see there is that, well, first of all, the plaintiff did not return to Dr. Schweigler in 2001 for follow-up, even though he said he's no longer able to work right now. He didn't return to any doctor until October 2002. At that time, he says, I'm out of work now, okay, and I need an inexpensive way to refill my medications. And the medication, by the way, that you gave me in January 2001 when I was working worked really great. No back examination. He's given medication. Okay. And then also he tells doctors, various doctors, that he's working between 2001 and 2003. In March 2003, he says, I'm going to Hawaii to look for work. And when he gets back, he says, I'm still job hunting. In addition, he's engaging in very robust activities. He's moving hay and milking goats on his father's farm in 2003. Now, the ability to perform these activities at all seems inconsistent with a severe back impairment. And the fact that he says his condition has worsened since 2001, I think we can safely assume that he was doing better in 2001. He also listed his leisure activities as skiing, playing tennis, and snowboarding. In addition, the laboratory findings from 2001, the MRI that Dr. Schweigler took, showed only early instability and some stenosis. In 2003, we have marked stenosis. And that's when Dr. Schweigler says he's disabled for more than 12 months or up to 12 months. He also recommended potential surgery at this time. None of these marked findings were in the record prior to 2003. And I just want to point out the Webb case, which plaintiff cites in their brief, is factually and procedurally distinguishable from this case. In Webb, the ALJ disposed of the entire case at step two. Here, the ALJ merely found a later onset date. It happened to be after the date last insured. In Webb, the case was sent back because it was unclear how severe the plaintiff's impairments were. And the Court also found there were very good reasons for these very large gaps in treatment in Mr. Webb's case. He had severe medication side effects. He had these alternating successive conditions. Here, the plaintiff has offered no reasonable explanation why we have these huge gaps in treatment. A year goes by. And he just goes for a medication refill. A reasonable inference is he did not go to the doctor because he wasn't having problems. Remand is not necessary in this case because we have a fully developed record. The plaintiff fails to establish how recontacting its medical sources would establish the presence of limitations. We already know what Dr. Schwagler said in 2001, which was that plaintiff was only briefly limited and would get back on track. And, again, he evidently did get back on track because he didn't go to a doctor for another year. A medical expert is also not necessary in this case because the issue of onset is not ambiguous. The ALJ found the plaintiff's disability onset occurred in September 2003 based on a treating doctor opinion. This is a legitimate medical basis. SSR 8320 does not apply in this case. In fact, plaintiff does not contend that there's an issue of onset of disability prior to the date last insured, but only that the evidence might show that he had a severe impairment. And also plaintiff argues that the ALJ should have obtained his testimony. In this case, the plaintiff validly waived his right to appear at the hearing. He asked for a decision on the record. And there's no contention this was an unknowing or involuntary waiver. In fact, we submit that his contemporaneous statements to his doctors during the relevant period are the most reliable evidence of the extent of his limitation. But these are all side issues. If you look at the record as a whole, plaintiff's activities, his work, his course of treatment, substantial evidence supports ALJ's finding of no severe impairment prior to the date last insured. And, in fact, it would be your position that it would be irrational for the ALJ to reach a different conclusion, that he was entitled to benefits. It would be irrational? Well, I think that this Court would defer, if there's a reasonable difference of opinion, this Court would defer to the ALJ's findings. And so I guess my opinion is that my position is that the ALJ's findings are supported by substantial evidence and free of legal error, and that's all we need. My worry about this particular case is the low standard that it seems to be, if you will, I worry that we're hurting this claimant because of the low standard that needs to be filled to hit Level 2 evaluation. And all of the things that counsel adequately put forward as evidence that nobody seems to have said anything about. And with the low standard, that's the worry that I have. I do not want to unduly hurt this particular claimant based on what this ALJ did, which seemed to ignore those evidences or pieces of evidence. I understand your concern. We certainly don't want to be denying benefits to people who deserve them. And the Step 2 standard is de minimis. However, the plaintiff still has to come forward with some evidence. And we do have standards. And the agency, you know, does assist claimants in developing their cases, and they try to get all the medical evidence there, and they did this in this case. The plaintiff was afforded appropriate process. The record, we don't need to go back. Going back will add nothing. And I'd just like to point out that plaintiff said there's six pieces of evidence that are important here, and one is a June 1999 medical report. The plaintiff was working at substantial gainful levels during that period, and he made $31,000. That's at ER 54. Obviously, any kind of discomfort he was experiencing from sitting on his job was not getting in the way of his working at this job. So to conclude, we would request this Court to affirm the ALJ's decision. Thank you so much. Thank you. Ms. Gilbrell will give you a minute. Thank you. Vincent V. Heckler, a Ninth Circuit case, and I'll have the site for you, indicates that significant probative evidence must be addressed in the decision. That is how the Court can resolve its concern, by sending this case back to the agency for the Court to adequately address the evidence so that everyone can be assured that it was addressed. That's not unduly prejudicial to the agency to send this case back for a new hearing, I don't think, given that the ALJ didn't address this important evidence. In addition to being supported by substantial evidence, the ALJ's decision also has to be free of legal error. And when an ALJ does not address significant probative evidence, as he did in this case, as he did not do in this case, that is legal error and the Court should remand. Although the commissioner has cited to a lot of evidence on the other side, that evidence was not addressed either. The ALJ is free to cite evidence on either side on remand to ensure that this person's claim is adequately addressed, and that's what we're requesting in this case. Thank you. We thank both counsel for the argument. The case just argued is submitted. We'll move to the next case on this morning's calendar. Amaker v.
judges: Clifton, Smith, Sandoval